State v. Williams.

---

STATE OF MISSOURI, Respondent, v. W. F. WILLIAMS, Appellant,

Kansas City Court of Appeals, April 15, 1889.

1. **Sunday Law :** PLAYING BASE-BALL A VIOLATION OF. Section 1580, Revised Statutes, prohibiting horse-racing, cock-fighting and playing at cards or games on Sunday, is not aimed to prevent the doing of things immoral *per se*, or the tendency of which is immoral, as the inhibition is not against gambling or betting on the games, but merely against doing the act on that day, though it be not immoral or tending to immorality, and playing base-ball on Sunday comes within its inhibition and is an offense thereunder.

2. ————: RULES AS TO THE CONSTRUCTION OF STATUTE : APPLICATION OF. The rule for the construction of statutes, " that where the particular words of a statute are followed by general,—as if, after the enumeration of classes of persons or things, it is added, ' and all others,'— the general words will be restricted in meaning to objects of the like kind with those specified," will not be applied where the application of the rule would be in the face of the evident meaning of the legislature, the object of the rule being not to defeat but to carry out the legislative intent ; and so, where the expression in a statute is special or particular, but the reason is general, the expression should be deemed general ; and an interpretation must never be accepted that will defeat its own purpose, if it will admit of any other reasonable construction.

*Appeal from the Randolph Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*Sam. C. Major*, for appellant.

(1) It is an established rule of construction that where general words follow particular ones, the general words will be limited in their meaning and restricted in their operation to things of a like kind and nature with those particularly specified. *State v. Bryant*, 90 Mo. 535 and cases ; *City St. Louis v. Laughlin*, 49 Mo. 559 ; *City St. Joe v. Porter*, 29 Mo. App. 605 ; *Knox City v. Thompson*, 19 Mo. App. 523 ; *Bank v. Tinsley*, 11 Mo. App. 500. (2) Penal and criminal statutes must be strictly construed in those parts which are against defendants and liberally construed in those which are in their favor. Bish. Stat. Cr. [ 2 Ed.] secs. 193, 194, 227 ; *State v. Bryant*, *supra*, and cases cited. (3) (*a*) In construing the penal code of New York, sections 259, 262, 265, which prohibited all shooting, hunting, fishing and playing on the first day of the week, " commonly called Sunday," it is held by the supreme court that playing base-ball in an open park on Sunday was not such playing or gaming on Sunday as was prohibited by statute. *State v. Dennin*, 35 Hun. 327 ; s. c., 11 Albany Law Jour. 383. (*b*) In the following cases it is expressly held that in prosecutions for violations of the law prohibiting certain acts on Sunday, the act charged as unlawful must come within the exact terms of the statutes. *State v. Ban*, 39 Conn. 40 ; *McGuire v. State*, 47 Md. 485 ; *Koen v. State*, 76 Ill. 294 ; *Com. v. Naylor*, 34 Pa. St. 86. (4) Sabbath-breaking was probably an offense at the common law, under the designation of " a profanation of the Lord's day." East Pl. Cr. 5 ; 4 Blk. Com. 63. But our statute, section 1580, *supra*, as well as the statutes of many other states, have clearly and

specifically defined what shall constitute a breach of the Sabbath, whether it be by pursuing one of the ordinary vocations or by gaming, or sport or recreation. Therefore since the common law has been abrogated by the statute, any offense charged to have been committed in violation of a Sunday law must come within the strict terms of the statute, or it does not constitute a violation. Any other construction would render statutes prohibiting labor, or games on Sunday for recreation, as puritanical as the Blue Laws of Connecticut. Such a construction it is evident, from the entire body of our statute law, was never intended by the legislature. If the game of base-ball is within the prohibitions of the statute ( sec. 1580 ) it follows as a legitimate conclusion that the whole catalogue of amusements or games for recreation are likewise included. Such a construction begins in a strange interpretation and ends in absurdity.

*Ben. T. Hardin*, for respondent.

(1) *People v. Weithoff*, 51 Mich. 203 ; s. o., 47 Am. Rep. 557 ; 4 Lawson's Crim. Def., p. 756, sec. 235 ; *State v. Book*, 41 Iowa, 550 ; Bish. Stat. Cr. [2 Ed.] p. 227, sec. 246, and sec. 246a ; *Id.*, secs. 857, 858, 859, 860, 861, 862, *et seq.* (2) The authorities cited by appellant in his brief, do not apply to this case, even in a remote particular. The case of *Bank v. Tinsley*, 11 Mo. App. 500, is a case of "option dealing" in grain, which is therein expressly decided to be no game at all. The other cases, cited under the first point in appellant's brief, are based upon the construction of statutes which, without a single exception, use the word "other." And they simply lay down the rule that where general words in a statute follow particular ones, they must be construed as applicable to persons or things *ejusdem generis*. No lawyer disputes that proposition. But that is not this case. Not a single case cited by appellant refers to an act which the court decided was a game of any kind.

(3) Games are of two kinds, viz : Games of chance and games of skill. Now, "Horse-racing and cock-fighting" are no games at all. *State v. Lemon*, 46 Mo. 375 ; *State v. Hayden*, 31 Mo. 35. These cases were based upon a supposed violation of a section corresponding with section 1547, Revised Statutes. (4) But the rule invoked by appellant cannot obtain here, because cards, racing and fighting, as used in the statute, are inferior to base-ball, so far as the desecration of the Sabbath is concerned ; and hence "games of any kind " cannot be limited to like kind. Bishop Stat. Crimes [2 Ed.] 229, sec. 246a. To ascertain what the legislature meant, we look into the subject and connection. *Id.*, sec. 246. And the rule "*ejusdem generis*" does not require the rejection of general terms. Bish. Stat. Cr., sec. 246. The general words used in the statute are intended, by the legislature. to embrace all games and sports which are disagreeable to the present condition of enlightened moral sentiment. Base-ball on Sunday is a disturbing element in a moral Christian community. It disturbs the peaceful enjoyment of those who would "remember the Sabbath day and keep it holy." The object and intent of the law-makers, was to suppress immoral practices on Sunday, which would disturb others who do not participate in such practices. It would not disturb to fish on Sunday ; no noise is made. But to be guilty of hunting game or shooting on Sunday is a misdemeanor. R. S., sec. 1578. And section 1580 was certainly intended to prohibit a crowd of several hundred persons from congregating on Sunday to play "games of any kind" which will draw such crowds. If not, then the words can have no meaning at all. And if that be the case, we must conclude that the law-makers had nothing in view when they employed the words. They could not possibly have intended that the words : "Or games of any kind" should only embrace such acts, or things of "like kind " as horse-racing, cock-fighting or playing

at cards. ˙ That would be impossible. "Games" cannot mean horse-racing nor cock-fighting. That is not the meaning of the last two offenses mentioned. "Games of any kind" cannot mean of a like kind as cards. Cards being a game of chance—a gambling device—games of any kind cannot be limited to mean chance games, but embrace games of skill as well. The conclusion must inevitably be that the conviction in this case was right, and that the carrying out of the legislative intent must result in the affirmance of the judgment.

ELLISON, J.—The defendant was indicted, tried and convicted for playing the game of base-ball on Sunday. He appeals to this court on the ground, as alleged by him, that "playing at a game of base-ball on˙Sunday is not forbidden by the laws of this state."

The testimony on the part of the state was, in substance, as follows:

"The defendant was, during the year 1888, a member of the Moberly Base-Ball Club ; that on a certain Sunday in July, 1888, the club played a game of base-ball at their grounds, just outside of the corporate limits of the said city of Moberly, and that the defendant was present and participated in the game ; that there were also present as spectators several hundred people."

The section of the statute under which the indictment was found, is as follows: "Sec, 1580. Every person who shall be convicted of horse-racing, cock fighting, or playing at cards or games of any kind, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars."

The objection urged is that the game of base-ball is not included in the general words, " or games of any kind," under the familiar ·rule of construction, which, as stated by Bishop, is, " That where particular words of a statute are followed by general,—as if, after the

State v. Williams.

enumeration of classes of persons or things, it is added, 'and all others',—the general words are restricted in meaning to objects of the like kind with those specified."

But the object of this rule must not be overlooked ; its object is, not to defeat, but to ascertain, and carry out, the legislative intent. Where, therefore, the application of the rule would be in the face of the evident meaning of the legislature, it will not be applied. Bish. Stat. Crimes, sec. 246 ; *Woodsworth v. The State*, 26 Ohio St. 196. So, where the expression in a statute is special or particular, but the reason is general, the expression should be deemed general. 1 Kent, 462. " In construing statutes, penal as well as others, an interpretation must never be adopted that will defeat its own purpose, if it will admit of any other reasonable construction." 9 Wheat. 381.

In *Shropshire v. Glasscock*, 4 Mo. 536, the question was whether a forfeit bond given to secure the running of a horse-race was within the terms of the gaming statute, which read, that all notes or bonds for the payment of money "won by gaming, or playing at cards, dice, or any game or games, shall be void and of no effect." And the rule of construction here contended for was urged in that case ; but the court held, that the fact that the legislature intended to use general words, sufficient to embrace all modes of gaming, was made evident by the use of the words " or any other game or games," after the words " or playing at cards or dice," thereby intending again to prohibit all fashions and modes of gaming. This case has been approved in *Boynton v. Corle*, 4 Mo. 599 ; *Eubanks v. The State*, 5 Mo. 450 ; *Hayden v. Little*, 35 Mo. 418.

By way of illustration only, we note the following decisions on the statutes quoted. In *Woodsworth v. The State, supra*, the statute is : " That if any person shall abuse any judge or justice of the peace ; resist or abuse any sheriff, constable *or other officer*, in the execution

of his office," etc., and the supervisor of a township was held to be covered by the words, " or other officer."

In the *State v. Williams*, 2 Strob. ( South Car.) 474, the words of the statute are :    " If any person shall take from any field, not belonging to such person, any cotton, corn, rice, or other grain," etc., and a conviction for stealing a half bushel of peas was upheld.

In *State v. Holman*, 3 McCord ( South Car. ) 306, the defendant was convicted of " packing and pouring" an " undue quantity of water" into a bale of cotton, under a statute reciting that whoever shall be convicted " of knowingly and wilfully packing or putting into any bag, bale or bales of cotton any stone, wood, trash cotton, cotton seed, or any matter or thing whatsoever."    The court in that case adopted the language of the supreme court of the United States in the case of *United States v. Fisher*, 2 Cranch, 335, 390, that where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed.

In *Commonwealth v. Percavil*, 4 Leigh. ( Virginia ) the defendant was held for killing hogs of another, under a statute reading, that any person who shall " cut down any tree growing on the land of another, or destroy or injure any such tree, or any building, fence or other improvement," etc., or who shall " take and carry away, or destroy or injure, any tree already cut, or any other timber, or *property real or personal*."

In keeping with these cases the supreme court of Alabama in *Foster v. Blount*, 18 Ala. 687, has said that the rule here discussed, and which was invoked in each of the cases above cited, is a rule of construction to ascertain the intention of the legislature and when that is clear, the courts are bound by it.    " If we were to restrict the meaning of general words, when the framers of the law, by the use of them, intended to embrace other

persons or things not embraced by the particular words, we annul the law instead of executing it." See also *State v. Cooper*, 5 Day, 250 ; *Commonwealth v. Wyman*, 8 Met. 247 ; *U. S. v. Briggs*, 9 How. 351.

Now the statute under consideration in this case, was evidently intended to prevent a desecration of the Sabbath, by restraining the doing of those things which are offensive to a Christian community, *by being done on that day*. The day upon which the act is done was in the view of the lawmaker, for otherwise, if it was the act only, the law would have prevented horse-racing, card-playing "or games of any kind," on any day, Sunday or secular. The statute was not aiming to prevent the doing of things immoral *per se*, or the tendency of which is immoral, as the inhibition is not against gambling or betting on the games, but merely against doing the act on that day, though it be not immoral or tending to immorality. The object of the law-makers being thus apparent, and the language used to cover that object, so apt, would it not be inexcusable technical refinement for the courts to say that the general words, "or games of any kind," did not include the game of base-ball? That game is said to have become national and it is well known that in some sections of the country and of this state, it attracts vast crowds of people, rivalling in numbers those which assembled in the amphitheatres of Rome or gathered to witness the Olympian games of Greece. It is going further than we feel at liberty to venture, to say that the legislature did not intend to include such a game, in the terms of the statute under consideration.

The rule, which we have quoted, means that the general words of the statute will be confined to things *ejusdem generis*, that is of the same kind as those the special words have enumerated. The general words are generally these, " or any other," etc. This rule, as we have stated, is a rule of construction. It is not

applied when it is evident that the intention of the
statute will be thwarted by its application, or, where
the general words will not permit such restriction.   The
statute here is peculiar.   It will be noticed that it does
not use the words, or any other game, but says " or
games of any kind."

If it had used the former words, it might with more
reason, be said to have meant any other game of like
kind with those specified, and might have been so read.
But with the words it has used, such interpretation
would require us to read it, " or games of any kind of
like kind ;" a mode of expression in itself contradictory
and which could scarcely have been meant by the
law-makers.

Again, we find ourselves in the dilemma the court
was in the case in 4° Mo. *supra*.   The contention there
was that, the words, " other game or games," were
only intended to embrace games of like kind with cards
and dice ; and that games of the turf were not intended
to be embraced by the act.   The court in that case said :
" We are not satisfied that this construction of the act
is correct.   What game would be of such like kind as to
correspond with this construction, we cannot exactly
undertake to say.   All those games which require a
shelter, a house, a deep cellar or dark place, to be suc-
cessfully performed, are alike, or are of like kind in the
place, but in many the principles of the games may be
essentially different from each other."

So we are at a loss to know what other games would
be of like kind with cards, which are mentioned in this
statute, for it must be borne in mind, that the gambling
element is not made an ingredient of the game.

My own opinion is, that while horse-racing and
cock-fighting may be classed generally, as games, in the
sense that they are amusements, diversions or sports ;
yet they are not such games as are commonly under-
stood may be " played at," and in this sense they were

understood by the law-maker. And the words of the statute, "or playing at cards or games of any kind," which may be read, playing at cards, or playing at games of any kind, were intended to stand disconnected from horse-racing or cock-fighting, and were intended to prevent playing at any games on Sunday.

I know the usual argument is here introduced, of innocent and harmless games; but none of them, disassociated from the idea of gambling, which, as we have seen, is not here made an ingredient of the offense, are any more harmless *per se*, than playing at cards, and the same argument can be directed at cards, which are specially named by the law, as to others not named. The argument is additionally blunted by the consideration, that no game can be more quietly or secretly played than cards.

The distinguished counsel for defendant has cited us to the cases of *State v. Bryant*, 90 Mo. 535; *City of St. Louis v. Laughlin*, 49 Mo. 559; *City of St. Joseph v. Porter*, 29 Mo. App. 605; *Knox City v. Thompson*, 19 Mo. App. 523; and we have not overlooked them in the consideration which we have given this case. Those cases were correctly decided. They were cases in which the rule of construction referred to was an aid whereby the intention of the legislature might be ascertained, but we do not think them applicable to this statute, the object, intention and peculiarity of which, we have endeavored to point out.

The defendant was properly convicted by the trial court, and with the concurrence of the other judges, the judgment will be affirmed.