## PENALTY FOR DENIAL OF CIVIL RIGHTS.

Court of Appeals for Mahoning County.

YOUNGSTOWN PARK & FALLS STREET RAILWAY COMPANY V. ELIZA
A. TOKUS, AS NEXT FRIEND TO CLARENCE S. TOKUS.

Decided, March 23, 1915.

*Civil Rights—Privilege of Dancing Pavilion Denied to a Young Colored
Couple—Meaning of a Statute to be Gathered from the Ordinary
Meaning of the Words Used Therein—Sections 12940 and 12941.*

1. A public dancing pavilion is a place of public amusement within
the meaning of Section 12920, General Code.
2. A proprietor of a public dancing pavilion, who ejects another there-
from, after he had been admitted thereon, on account of his
color or race and for no other reason, is liable to pay a penalty
under Section 12941, General Code.
3. The posting of notices in the park, wherein a dancing pavilion is
situate, that the park and pavilion are private grounds and that
the proprietor reserves the right to exclude any person whom he,
for any reason, deems objectionable, will not relieve the proprietor
from liability under Section 12941, General Code, to one ejected on
account of color or race, if every person, desiring to do so, is
admitted except on account of color or race.

*Arrel, Wilson, Harrington & DeFord,* for plaintiff in error.
*S. L. Clark,* contra.

POLLOCK, J.; METCALFE, J., and SPENCE, J., concur.

The defendant, Clarence S. Tokus, by his next friend, brought
an action against the plaintiff company in the court of common
pleas of this county to recover a penalty, under Section 12941
of the General Code, for being wrongfully ejected from a public
dancing pavilion owned by the plaintiff company The case was
tried, resulting in a judgment in favor of Tokus, and this ac-
tion is prosecuted to reverse that judgment.

It appears that the Youngstown Park & Falls Street Railway
Company, on June 25, 1914, was operating a street railway from
this city to a park known as Idora Park; that this company was

the owner of the park and certain of the amusements in the park, including a dancing pavilion; that on this date Clarence S. Tokus, who is a young colored man, and his sister attended the park in connection with a Sunday school picnic of white people; that he and his sister were members of this Sunday school; that they were admitted with the rest of the Sunday school people into the park, and continued there until some time in the afternoon, when Tokus purchased a ticket for the dancing pavilion, and he and his sister were admitted through the gate onto the floor of the pavilion, and proceeded to participate in the dance then going on; that during the time of the dance one of the officers in charge of the park and pavilion went onto the floor of the pavilion and removed them, or required them to leave the pavilion.

There was no complaint made of the conduct of either this young man or his sister, but they were removed because of their color and race and for no other reason.

The Park & Falls Company had posted notices at the gate of the park and at other places on the park, giving notice that the park grounds and the amusements thereon were private property, and that it reserved the right to eject any person or persons whom it deemed objectionable. The plaintiff company had provided, under its rules, certain times when white people could occupy the pavilion alone, and other times when colored people could occupy it exclusively, each one occupying it at these times to the exclusion of the others.

The action below was maintained under Sections 12940 and 12941 of the General Code. The former section reads as follows:

"Whoever, being the proprietor or his employee, keeper or manager of an inn, restaurant, eating house, barber shop, public conveyance by land or water, theater or other place of public accommodation, and amusement, denies to a citizen, except for reasons applicable alike to all citizens and regardless of the accommodations, advantages, facilities, or privileges thereof, or, being a person who aids or incites the denial thereof, shall be fined not less that fifty dollars," etc.

And the latter section provides that:

"Whoever violates the next preceding section shall also pay not less than fifty dollars nor more than five hundred dollars to the person aggrieved thereby, to be recovered in any court of competent jurisdiction in the county where such offense was committed."

It is claimed on the part of the plaintiff company that a public dancing pavilion is not included within the terms of the statute. It will be noticed that after naming inns, restaurants, eating houses, barber shops, conveyances by land or water, theaters, that it then reads "or other place of public accommodation and amusement," and it is claimed that dancing pavilions are not included within the term, "other places of public accommodation and amusement."

It is urged that this is a penal statute and should be strictly construed; that the maxim *ejusdem generis* should be applied in the construction of this statute; that where certain persons, objects or things are named, and followed by general terms, that the general terms should be construed to apply to objects, persons or things of similar or like kind.

This is a well recognized rule of statutory construction which is intended to aid the court in determining the true meaning of a statute, but it should not be used to limit or abridge the well defined meaning of the Legislature gathered from the ordinary meaning of the words used in the statute, keeping in mind the object that the Legislature had in its enactment.

In the case of *Woodworth* v. *State*, 26 Ohio St., 196, the Supreme Court of this state construed a similar expression in a statute reading as follows:

"That if any person shall abuse any judge, or justice of the peace, resist or abuse any sheriff, constable or other officer, in the execution of his office, the person so offending," etc.

In the opinion on the following page McIlvaine, Justice, uses the following language in reference to this rule of construction:

"Now, it must be remarked that the rule of construction referred to above, can be used only as an aid in ascertaining the legislative intent and not for the purpose of confining the

operation of a statute within limits narrower than those intended by the lawmaker. It affords a mere suggestion to the judicial mind that, where it clearly appears that the lawmaker was thinking of a particular class or persons or objects, his words of more general description may not have intended to embrace those not within the class. The suggestion is one of common sense. Other rules of construction are, however, equally potent, especially the primary rule, which suggests that the intent of the Legislature is to be found in the ordinary meaning of the words of the statute. Another well established principle is, that even the rule requiring the strict construction of a penal statute, as against the prisoner, is not violated by giving every word of the statute its full meaning, unless restrained by the context."

We find that this case has been cited by the courts of many other states and the principle there laid down followed.

The Supreme Court of the state of Missouri, in the case of *State* v. *Williams*, 35 Mo. Appeal Rep., 541, refer to this rule as follows:

"The rule for the construction of statutes that where the particular words of a statute are followed by general, as if, after the enumeration of classes of persons or things, it is added, 'and all others,' the general words will be restricted in meaning to objects of the like kind with those specified, will not be applied where the application of the rule would be in the face of the evident meaning of the Legislature, the object of the rule being not to defeat but to carry out the legislative intent; and so, where the expression in a statute is special or particular, but the reason is general, the expression should be deemed general; and an interpretation must never be accepted that will defeat its own purpose, if it will admit of any other reasonable construction."

We especially call attention to this case on account of the many citations contained in the opinion construing the ruling.

We also cite on this subject *Sutherland on Statutory Construction*, Section 279; *Gillock* v. *The People*, 49 N. E., 712; *McReynold* v. *The People*, 82 N. E., 945; *United States Cement Co.* v. *Cooper*, 88 N. E., 69.

Turning now to the statute under which this action was brought, and looking at the evident intent of the Legislature,

from the language of the statute itself, we find that they .were evidently intending to give every citizen equal rights in public places to which they were accustomed to go, either for accommodation or amusement. The Legislature did not have in mind specially certain places which they name and others of a similar or like kind but the object they had in view was the citizen. They intended that there should be no discrimination on account of color or race to citizens who might apply at public places for either accommodation or amusement.

While the maxim insisted upon is a rule of statutory construction which a court in construing this statute should consider, yet we think that it should not be permitted to override the clear intention of the lawmakers as evidenced from the plain reading of the statute itself, and we think that a public dancing pavilion comes under the provisions of this statute, including other places of accommodation and amusement.

There is another question urged, and that is that the park and dancing pavilion were private property, and that the plaintiff company reserved the right to admit whom they pleased and eject whom they pleased. Notices were posted at the gate and other places in the park giving notice of this claim.

So far as the evidence in this case goes, every one was admitted into the park and permitted to enjoy the accommodation and amusements of the park, and no questions were asked and no one was refused the privileges of the park and amusements who paid the required charges and conducted themselves properly, except on account of color or race. We do not think that the provisions of the statute can be avoided or evaded by notices of this kind, when the public generally are admitted and no limitations are placed thereon except that of color and race, and that the eviction of any one from the park or the amusements on that ground would be a violation of the statute.

The other question urged that they had provided for separate times for white and colored people to occupy the dancing pavilion, which it is claimed were reasonable, we think is not before the court at this time, for the reason that this young man was permitted to purchase a ticket and enter on the floor of the

pavilion without any reference to his violation of that rule, and that his ejectment therefrom under those circumstances would be a violation of the statute, whether such arrangements can be made or not, as claimed by the company.

The judgment in this case is affirmed.