THE PEOPLE *ex rel.* John B. Gaskill, Appellant, *vs.* THE
FOREST HOME CEMETERY COMPANY *et al.* Appellees.

*Opinion filed February 20, 1913—Rehearing denied April 3, 1913.*

1. CORPORATIONS—*powers and duties of corporations are to be determined from their charters.* Corporations are creatures of the legislative branch of the government and their powers and duties are to be determined from their charters where such powers and duties are defined, having in view at all times the presumption that the General Assembly intended to promote the public interest by creating them.

2. SAME—*when a corporation cannot arbitrarily select its patrons.* If a corporation is created for the purpose of performing a service for the public or is invested with powers concerning which the public at large have a direct and substantial interest, it cannot arbitrarily select the persons for whom it will perform its services nor exercise its powers contrary to the policy of the State.

3. SAME—*corporation formed to serve the public must serve all who apply, on equal terms.* A corporation formed to serve the public, generally, must serve all who apply, on equal terms; and if the corporation devotes its property to a use in which the public have an interest, it must submit to be regulated and controlled by the public to the extent of the interest created.

4. SAME—*what considerations affect question of public character of corporation.* The facts that a corporation, such as a waterworks company, controls the supply of water so that those whom it refuses to serve cannot be served at all, or that it has the power of eminent domain, which is a power that can be exercised only for public use, or that it uses its property in such manner as to make it of public consequence and affects the community at large, are to be considered as determining the character of the corporation as one for public service.

5. SAME—*corporation not necessarily public because its property is exempt from taxation.* The fact that the property of a corporation is exempt from taxation under the constitutional provision concerning property used for school, religious or other purposes, does not necessarily determine the character of the corporation as one organized to serve the public generally.

6. SAME—*when cemetery corporation is not organized to serve the public generally.* A cemetery corporation which has no power of eminent domain under its charter and has no monopoly of the burial places in the vicinity is not such a public corporation as is required to sell lots to all persons who may apply therefor, and it

has a right to make and enforce a rule prohibiting the sale of lots for burial purposes to colored persons.

7. SAME—*act of 1911, concerning civil and legal rights, construed.* The act of 1911, concerning civil and legal rights, (Laws of 1911, p. 288,) has a special provision that there shall be no discrimination, on account of race or color, in the price to be charged for lots in cemeteries, and for that reason cemeteries cannot be regarded as embraced within the general term "all other places of public accommodation and amusement," which the act provides shall be equally enjoyed by all persons within the jurisdiction of the State.

8. SAME—*when refusal to admit a body for burial is not a violation of constitutional rights.* Refusal of a cemetery corporation, not having the power of eminent domain and not having a monopoly of the burial places in the vicinity, to sell a lot to a colored person and admit the body of his wife for burial, solely upon the ground of his color, is not a violation of the rights of such person under the constitution of this State, nor under the fourteenth amendment to the Federal constitution, which only applies to acts of the State.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN B. McGOORTY, Judge, presiding.

GEORGE W. WILBUR, for appellant:

A corporation must comply with the terms of its charter, and cannot extend or restrict its provisions. *Inter-Ocean Co.* v. *Associated Press,* 184 Ill. 438.

The property of the Forest Home Cemetery Company, by the terms of its charter and by its acts, is impressed with a public duty, and is therefore a public corporation. *Inter-Ocean Co.* v. *Associated Press,* 184 Ill. 438; *Stock Exchange* v. *Board of Trade,* 127 id. 153; *Commission Co.* v. *Stock Exchange,* 143 id. 210; *Danville* v. *Water Co.* 178 id. 299; *People* v. *Steele,* 231 id. 340; *Wagner* v. *Rock Island,* 146 id. 139.

A corporation organized under the general Incorporation law for the purpose of establishing a cemetery for burial purposes is impressed with a public duty. *Cemetery Co.* v. *Hopkinson,* 114 Ill. 209; *Trustees* v. *Walsh,* 57 id. 363. .

Cemeteries are authorized by law and are public necessities. *Lake View* v. *Cemetery Co.* 70 Ill. 191; *Cemetery Ass'n* v. *Railroad Co.* 121 id. 199.

An exemption from taxation impresses the corporation with a public duty. *People* v. *Cemetery Co.* 86 Ill. 336.

The refusal of the court to grant the writ deprived the relator of rights guaranteed to him under the fourteenth amendment to the constitution of the United States. *Gandolfo* v. *Hartman,* 49 Fed. Rep. 181.

The relator was entitled to the writ as a matter of right. *Cemetery Ass'n* v. *Commonwealth,* 81 Pa. St. 235.

PEARSON & HERRICK, for appellees:

The relator has no contractual or proprietary right to the burial of his wife in the company's cemetery. He has no such right under the fourteenth amendment to the Federal constitution, since the provisions of that amendment have reference to State action exclusively, and not to any action of private individuals. *Virginia* v. *Rives,* 100 U. S. 313; *Civil Rights cases,* 109 id. 3; *Clark* v. *Maryland Institute,* 87 Md. 643.

The relator has no such right under the Illinois constitution nor under any statute of Illinois. The Civil Rights act does not apply. Laws of 1911, sec. 1, p. 288; *Cecil* v. *Green,* 161 Ill. 265; Sutherland on Stat. Const. (Lewis' ed.) secs. 422 *et seq.,* 491 *et seq.* and 520 *et seq.*

The relator has no such right at common law, since the Forest Home Cemetery Company of Chicago is a private corporation, whose business is not "affected with a public interest." The company is organized under the general Incorporation law, with no restrictions or special privileges in its charter as stamp its business with a public character. The fact that its property used for cemetery purposes is exempt from taxation does not make the company a *quasi* public corporation. Const. of 1870, art. 9, sec. 3; Hurd's

Stat. 1912, chap. 120, sec. 2; chap. 21, sec. 1; *Clark* v. *Maryland Institute,* 87 Md. 643.

Cemeteries may be private as well as public. Hurd's Stat. 1912, chap. 21, sec. 1; *Cemetery Ass'n* v. *Beecher,* 53 Conn. 551; *Matter of Deansville Cemetery Ass'n,* 66 N. Y. 569; *Board of Health* v. *VanHoesen,* 87 Mich. 533; *Cemetery Ass'n* v. *Redd,* 33 W. Va. 262; Lewis on Eminent Domain, (3d ed.) sec. 553.

This court has lately given a complete classification of the cases where a business has been held to be affected with a public interest, and the case at bar clearly does not fall within such classification. *People* v. *Steele,* 231 Ill. 340.

Wherever it is doubtful as to whether a given business is affected with a public interest the court should leave it to the legislature to determine in the first instance. *Commission Co.* v. *Stock Exchange,* 143 Ill. 210.

Private educational institutions, although incorporated, may refuse to admit colored students. *Clark* v. *Maryland Institute,* 87 Md. 643; *Booker* v. *Medical College,* 156 Mich. 95.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county sustained the demurrer of appellees, the Forest Home Cemetery Company and its officers, to the petition of the People, on the relation of John B. Gaskill, for a writ of *mandamus* commanding the appellees to receive for burial the body of Pinkie B. Gaskill, deceased, late wife of the relator, and to permit the burial thereof in the usual and customary manner and in a place suitable for such burial, upon the payment of the usual and fixed charges for such service and accommodation. The relator elected to stand by the petition, whereupon it was dismissed at his cost. The petition alleged that the denial by the appellees of the right of burial in the

Forest Home Cemetery was an infringement of the rights of the relator under the constitutions of this State and the United States, and an appeal to this court was prayed for, allowed and perfected.

The following are the material facts alleged in the petition and admitted by the demurrer: The Forest Home Cemetery Company is a corporation organized under the general Incorporation act of 1872 to establish a cemetery in Cook county, to acquire lands for that purpose and sub-divide and improve the same, and to sell lots for burial purposes. The corporation obtained about two hundred acres of land about three and one-half miles west of the city limits of Chicago and entered upon the business for which it was formed. It has sold many lots to the general public for burial purposes and still owns and holds many lots for sale for the same purpose. The relator is a colored citizen of the United States and of Cook county. From 1890 to 1896 four of his children died, and they were buried in the cemetery in single burial places, separate from each other. The corporation passed a resolution that after December 31, 1907, the cemetery would be maintained for the interment of the remains of persons of the white race, only, but the remains of colored persons owning lots in the cemetery, and their direct heirs, should be admitted for burial in the lots owned by them. On March 16, 1912, Pinkie B. Gaskill, wife of the relator, died, and he applied for space for the burial of her body, and permission was refused solely because it was the body of a colored person. He was ready, willing and able to pay the fixed charges for the accommodation asked for, but the privilege was denied and the reason was explained in a letter stating that the officers had no personal prejudice nor ill-will toward the colored people, but there had been so much trouble and objection that it was for the best interest of the cemetery to exclude them, and saying: "If the colored people did buy lots it would only make the

neighbors angry and kick and remove to some other part of the cemetery or possibly to some other cemetery." The letter placed the refusal upon business grounds and the necessity for the corporation to do what was best for its own interest.

Corporations are creatures of the legislative branch of the government and their powers and duties are to be determined from their charters, where such powers and duties are defined, having in view at all times the presumption that the General Assembly intended to promote the public interest by creating them. If they are created for the purpose of performing a service for the public or invested with powers concerning which the public at large have a direct and substantial interest, they cannot arbitrarily select the persons for whom they will perform the service or exercise their powers contrary to the public policy of the State. A corporation formed to serve the public must serve all who apply, on equal terms, and if the corporation devotes its property to a use in which the public have an interest, the owner must submit to be controlled and regulated by the public to the extent of the interest created. Corporations organized to serve the public generally, such as those which furnish water, gas or electric lights in cities, cannot select their patrons but must furnish accommodations to all who apply, on equal terms and at reasonable rates. (*Wagner* v. *City of Rock Island,* 146 Ill. 139; *City of Danville* v. *Danville Water Co.* 178 id. 299.) As to such corporations there is the additional reason that they have exclusive control of the supply and those whom they refuse to serve cannot be served at all, which impresses the property with a public interest. One reason for determining that the property of the corporation is affected with a public interest and devoted to a public use is that the corporation may exercise the sovereign power of eminent domain, which can only be granted to a corporation for a public use. That was the fact in the case of

*Inter-Ocean Publishing Co.* v. *Associated Press*, 184 Ill. 438, in addition to the fact that the Associated Press had a practical monopoly of furnishing news required by the public and in which the public were vitally interested. So, also, property becomes clothed with a public interest when used in such a manner as to make it of public consequence and to affect the community at large. (*New York and Chicago Stock Exchange* v. *Board of Trade*, 127 Ill. 153.) None of these considerations apply to the Forest Home Cemetery Company. There is no provision of its charter or rule of public policy declared by any authority competent to make known or establish such policy, requiring it to admit for burial all persons who may apply for the privilege. There is no element of monopoly, since it does not control all burial places in the vicinity of Chicago and the community at large is not affected so as to impress its property with a public interest. In *Rosehill Cemetery Co.* v. *Hopkinson,* 114 Ill. 209, the corporation possessed the right to condemn property, and on that ground it was held to be a *quasi* public corporation and bound to exercise its rights and privileges fairly and impartially as between the owners of lots. The relator in this case was not the owner of a lot, and did not come within the decision in that case nor the case of *Mt. Moriah Cemetery Ass'n* v. *Commonwealth,* 81 Pa. St. 235, where the colored man was the owner of a lot in the cemetery. This corporation did not deny the right of burial to anyone who was the owner of a lot. Undoubtedly, a corporation for cemetery purposes may be incorporated to serve the public generally and endowed with the power of eminent domain. A corporation organized under the act of 1903 (Laws of 1903, p. 90,) is authorized to acquire land by condemnation, which is necessarily for a public use. But this corporation has no such power.

It is argued that exemption from taxation fixes the character of the corporation as a public one, but the right

to exempt it rests on the constitutional provision which includes property used for school, religious and other purposes, where the corporations are not required to admit to their privileges all persons who may apply. As to private schools, it has been held that they may refuse to admit colored students. (*Clark* v. *Maryland Institute*, 87 Md. 643; *Booker* v. *Grand Rapids Medical College*, 158 Mich. 95.) The exemption from taxation does not fix the character of the corporation.

It is also claimed that the duty sought to be enforced is conferred by the act of 1911, concerning civil and legal rights. (Laws of 1911, p. 288.) That act declares that all persons within the jurisdiction of this State shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of various enumerated places of public accommodation and amusement, including with railroads, street cars and other public conveyances, funeral hearses, the use of which is not involved in this case, and concluding with the words, "all other places of public accommodation and amusement." Cemeteries are not of the same class as those places which are enumerated, and there is a special provision concerning cemeteries, which shows that they were not intended to be embraced within the description of places of public accommodation and amusement. That provision is, that there shall be no discrimination on account of race or color in the price to be charged and paid for lots or graves in any cemetery or place for burying the dead, and that provision would be superfluous if cemeteries were already included in the general provision. It was held in *Cecil* v. *Green*, 161 Ill. 265, that a drug store in which soda water was sold was not a place of public accommodation and amusement within the Civil Rights act then in force, and that the keeper thereof might refuse to sell soda water to a colored person. At least as convincing reasons could be given for excluding cemeteries.

The refusal to permit the body of relator's late wife to be buried in the Forest Home Cemetery did not infringe any right of the relator under the constitution of this State, and he has no right respecting such burial under the fourteenth amendment to the Federal constitution, which only applies to acts of the State. *Virginia* v. *Rives,* 100 U. S. 313.

The judgment is affirmed.                *Judgment affirmed.*