629 P.2d 1001

Salvador MALDONADO, Plaintiff/Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Defendant/Appellee.

2 CA–CIV 3837.

Court of Appeals of Arizona, Division 2.

April 2, 1981.

Rehearing Denied May 13, 1981.

Review Denied June 9, 1981.

Thur & Preston by Calvin C. Thur, Scottsdale, for plaintiff/appellant.

Evans, Kitchel & Jenckes, P. C. by William G. Fairbourn and M. Douglas Petroff-Tobler, Phoenix, for defendant/appellee.

## OPINION

HOWARD, Judge.

This appeal arises from the trial court's granting of appellee's motion to dismiss Counts III, IV and V of appellant's complaint.

Briefly, the complaint shows that on August 11, 1977, at approximately 9:20 p. m., appellant, a Mexican citizen, tried to board a Southern Pacific freight train as it was passing through Picacho, Arizona. Four employees of appellee Southern Pacific Transportation Company (Southern), caused a "jerking or bumping" of the train cars when appellant attempted to board it, causing him to fall under the wheels of the train. Appellant's left arm was severed, his left leg was broken, and he suffered other serious wounds which were open and bleeding.

Appellant's complaint states five claims for relief. The first alleges intentional infliction of injury and the second, wanton and reckless infliction of injury. Claims three, four and five are, respectively: Interference with a savior, failure to render aid and failure to call for medical assistance or report the injury. The trial court granted appellee's motion to dismiss Counts III, IV and V and appellant has timely appealed. We reverse for the following reasons.

### DID APPELLANT ESTABLISH A CLAIM FOR FAILURE TO RENDER ASSISTANCE?

Appellant claims that the court erred in dismissing Count IV, his claim for failure to render assistance. When reviewing a motion to dismiss for failure to state a claim, we presume that the facts alleged in the complaint are true. *Savard v. Selby*, 19 Ariz.App. 514, 508 P.2d 773 (1973). The test to be applied in resolving whether the complaint established that appellant is entitled

to relief under any theory of law is whether the complaint, taken in the light most favorable to appellant, is sufficient to constitute a valid claim. *Savard v. Selby,* supra; *Veach v. City of Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967). Motions to dismiss for failure to state a claim are not favored under Arizona law. *Folk v. City of Phoenix,* 27 Ariz.App. 146, 551 P.2d 595 (1976).

In order to establish a claim in tort, appellant must show the existence of a duty and a breach thereof. *Wilson v. City of Tucson,* 8 Ariz.App. 398, 446 P.2d 504 (1968). Furthermore, the complaint must allege that the breach of such duty was the proximate cause of the injuries sustained and that appellant was in fact damaged. *Curlender v. Bio-Science Laboratories,* 106 Cal. App.3d 811, 165 Cal.Rptr. 477 (1980); Restatement (Second) of Torts, Sec. 328(A).

Appellant's fourth claim for relief first alleges that the employees caused the train to "bump or jerk" while he was trying to board it. It then states:

"II. Defendants SOUTHERN PACIFIC COMPANY AND SOUTHERN PACIFIC TRANSPORTATION COMPANY and their agents and employees had affirmative duties with respect to the operations of their trains and the control of their right of way, which duties it owed to all persons and to plaintiff in particular, as follows:

1. A duty to render aid to any person who is injured by SOUTHERN PACIFIC trains or who was injured on SOUTHERN PACIFIC'S right of way.

2. A duty to render aid to any person who is injured and lying helpless and disabled on SOUTHERN PACIFIC'S right of way.

3. A duty to respond to and render assistance to an injured and disabled person on the SOUTHERN PACIFIC right of way who is calling to SOUTHERN PACIFIC employees for help.

III. That after plaintiff, SALVADOR MALDONADO, was severely injured by the aforesaid train and as he lay on the SOUTHERN PACIFIC right of way, in a helpless condition with his left leg severely injured and his left arm severed from his body, and with the defendants' knowing that he was severely injured, the defendants disregarded his calls for help. As the caboose of said train went slowly by the plaintiff, he called for help to DOES I and II who were standing on the platform of said caboose, but said employees of SOUTHERN PACIFIC COMPANY and SOUTHERN PACIFIC TRANSPORTATION did nothing to help and the defendants continued past the plaintiff without rendering assistance as he lay helpless on the ground.

\*     \*     \*     \*     \*     \*

VI. That the acts and omissions of the defendants in refusing to assist the plaintiff and refusing to respond to his pleas for help as he lay severely disabled and bleeding on the SOUTHERN PACIFIC right of way beside the SOUTHERN PACIFIC track after having been injured by the SOUTHERN PACIFIC train, constitutes extreme and outrageous, malicious, reckless and depraved conduct by the said agents, employees and servants of SOUTHERN PACIFIC COMPANY and SOUTHERN PACIFIC TRANSPORTATION COMPANY.

VII. That as a direct and proximate result of the extreme, outrageous, intentional, reckless, malicious and depraved conduct of the defendants as aforesaid, the plaintiff suffered severe emotional distress, fear and anxiety because he felt that his only hope for survival refused to render him assistance. . . ."

The precise question we must answer is whether Southern did in fact owe appellant a duty to render aid after he was seriously injured by the train. As there is no prior Arizona case law to the contrary, we will follow the position taken by the Restatement (Second) of Torts, Sec. 322. *Barnum v. Rural Fire Protection Company,* 24 Ariz. App. 233, 537 P.2d 618 (1975).

Section 322 states:

"If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him help-

less and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm." The Comment to this section further clarifies the existence of a separate and distinct duty to render assistance to appellant. It provides:

"*a.* The rule stated in this Section applies not only where the actor's original conduct is tortious, but also where it is entirely innocent. *If his act, or an instrumentality within his control, has inflicted upon another such harm that the other is helpless and in danger, and a reasonable man would recognize the necessity of aiding or protecting him to avert further harm, the actor is under a duty to take such action even though he may not have been originally at fault.* This is true even though the contributory negligence of the person injured would disable him from maintaining any action for the original harm resulting from the actor's original conduct.

*b.* The words 'further harm' include not only an entirely new harm due to the dangerous position in which the other has been placed by the actor's tortious act . . . but also any increase in the original harm caused by the failure to give assistance . . . and *any protraction of the harm which prompt attention would have prevented* . . . . (illustrations omitted)

*c.* Where the original conduct is tortious, the duty stated in this Section frequently is unnecessary to the existence of liability for the further harm, since the connection between the original wrongdoing and the further harm is usually such as to make the actor's conduct in law the cause of such harm. However, a *failure to perform the duty here stated creates liability even though the actor's original misconduct is not the legal cause of the further harm.*

*d. Effect of other's contributory negligence.* (emphasis in original) The liability which this Section recognizes is not imposed as a penalty for the actor's original misconduct, but for *a breach of a separate duty to aid and protect the other after his helpless condition caused by the actor's misconduct is or should be known.*

It is therefore immaterial that the accident which rendered the other helpless to care for himself was caused by his own contributory negligence as well as by the actor's misconduct, so that he cannot recover for the original injury, nor, apart from the duty stated in this Section, for any further harm which he suffers in consequence of it, although the actor's tortious conduct was undoubtedly the legal cause thereof." (emphasis added)

█ It is clear that a separate duty to render aid exists regardless of whether appellee's original misconduct was intentional or innocent or whether it was the legal cause of any further harm suffered.

█ A case similar to the one at bar is *Tubbs v. Argus,* 140 Ind.App. 695, 225 N.E.2d 841 (1967). In *Tubbs,* the appellant was traveling as a guest in appellee's automobile when she was injured. Appellee abandoned the car and did not render reasonable aid or assistance to the injured appellant. Appellant's amended complaint, alleging that she suffered additional injuries as a result of appellee's failure to render aid, was dismissed by the trial court. On appeal, the court reversed the judgment and stated as follows:

"At common law, there is no general duty to aid a person who is in peril, (citations omitted) However, in *L. S. Ayres & Company [v. Hicks]* supra, [220 Ind. 86] page 94, 40 N.E.2d [334] page 337, the Supreme Court of Indiana held that 'under some circumstances, moral and humanitarian considerations may require one to render assistance to another who has been injured, even though the injury was not due to negligence on his part and may have been caused by the negligence of the injured person. Failure to render assistance in such a situation may constitute actionable negligence if the injury is aggravated through lack of due care.' (citations omitted)" 225 N.E.2d at 842.

Relying on the Restatement (Second) of Torts, Sec. 322, the court concluded:

". . . It is the opinion of this Court that an affirmative duty to render reasonable

aid and assistance is not limited to those cases involving the flow of an economic advantage to the alleged defendant..... it is the opinion of the Court that the case at bar presents a situation in which an affirmative duty arises to render reasonable aid and assistance to one who is helpless and in a situation of peril, *when the injury resulted from use of an instrumentality under the control of the defendant.*" (emphasis added) 225 N.E.2d at 843.

We agree with the reasoning in *Tubbs.* In the case at bar, appellant received his injuries from an instrumentality under appellee's control. Under the Restatement rule and *Tubbs,* this is sufficient to impose a duty to render reasonable aid and assistance; a duty for the breach of which appellee is liable for additional injuries suffered.

Appellee argues in its brief that even if it had a duty to render aid, recovery should be denied because its failure to aid appellant was not the proximate cause of his injuries. It bases its argument on the fact that there were others who were available to render aid and did so. We do not agree. This was not a motion for summary judgment nor was it treated by the court and the parties as such. It was a motion to dismiss for failure to state a claim. The allegations in the complaint are sufficient to establish a claim for relief.

Not only do these allegations state a claim for relief under Sec. 322 of the Restatement (Second) of Torts, they also state a claim under the Restatement (Second) of Torts, Sec. 46, for intentional infliction of emotional distress. See *Cluff v. Farmers Insurance Exchange,* 10 Ariz.App. 560, 460 P.2d 666 (1969); *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App.1979). Accordingly, we hold that the trial court erred in dismissing Count IV of appellant's complaint.

## THE CLAIM FOR INTERFERENCE WITH A SAVIOR

■ Appellant's third count is for intentional interference with a savior. The complaint states in pertinent part:

"II. The defendants in addition to the duties previously alleged, also had additional affirmative duties with respect to the operations of their trains and the *control of their right of way, which duties* it owed to all persons and to the plaintiff in particular, as follows:

1. A duty not to intentionally attempt to interfere with efforts by third persons to come to the aid of a seriously injured person on the Railroad right of way.

2. A duty not to recklessly, wilfully or wantonly interfere with efforts by third persons to come to the aid of a seriously injured person on the Railroad's right of way.

3. A duty not to interfere with a savior who is the only hope of survival for an injured and helpless person on the Railroad's right of way after the Railroad's employees have refused to render aid or assist the injured and helpless person.

III. That after the defendants had severely injured SALVADOR MALDONADO and he was lying helpless on the defendants' SOUTHERN PACIFIC'S right of way next to the SOUTHERN PACIFIC track, three persons who heard him screaming came to him to try and help him and render aid. When the three persons arrived at SALVADOR MALDONADO'S side, his left arm was severed from his body, his left leg and knee were severely injured and he was bleeding from his wounds. DOES I and II, knowing that SALVADOR MALDONADO was seriously injured, helpless and in need of immediate assistance in order to save his life, yelled at the three persons who had arrived to give assistance in an effort to keep the plaintiff from obtaining necessary aid. Although the three persons who came to save SALVADOR MALDONADO'S life were distracted and delayed by the attempts of the defendant Railroad's employees to keep them away from the plaintiff, the said saviors disregarded the efforts of the defendant Railroad's employees because they knew SALVADOR MALDONADO was in need of immediate aid and would probably die without such aid. Defendants SOUTH-

ERN PACIFIC COMPANY, SOUTHERN PACIFIC TRANSPORTATION COMPANY and DOES I and II, recklessly, wilfully, wantonly and intentionally interfered with, delayed, distracted and attempted to further interfere with efforts of persons who had come to the aid of SALVADOR MALDONADO and who were attempting to save his life.

IV. That as a direct and proximate result of the defendants' reckless, wilful, wanton and intentional interference with the saviors, the plaintiff SALVADOR MALDONADO experienced additional physical pain and suffering and additional shock, anxiety, distress, fear and loss of blood for which SALVADOR MALDONADO is entitled to compensatory damages. . . ."

Whether an actor has a duty not to intentionally interfere with the aid that a third party is rendering to a person in peril is also a question which has never been addressed by our courts. We turn to the Restatement (Second) of Torts, Sec. 326 for guidance, which states:

"One who intentionally *prevents* a third person from giving to another aid necessary to prevent physical harm to him, is subject to liability for physical harm caused to the other by the absence of the aid which he has prevented the third person from giving." (Emphasis added)

The scope note to this section gives examples of the ways in which one can prevent a third person from rendering assistance. It provides:

"The actor can *prevent* a third person from rendering aid to another in many ways including the following: first, by so injuring the third person as to make him incapable of giving aid; second, by interfering with his efforts to give aid; third, by injuring or destroying the usefulness of a thing which the third person is using to give aid or by otherwise preventing him from using it; fourth, by obstructing the third person's access to the other." (Emphasis added)

We have examined the case law in this area and are unable to find that the complaint alleges a prevention of the rendering of aid. The most the count alleges is an *attempt* to prevent the rendering of aid.

## THE CLAIM BASED ON APPELLEE'S FAILURE TO CALL FOR MEDICAL HELP OR TO REPORT THE INJURY

Appellant's final claim is that the court erred in dismissing Count V of his complaint requesting relief for failure and refusal to call for medical assistance or report the accident. He claims that appellee was under both a statutory and a common law duty to report the accident.

Appellant's complaint alleges in pertinent part:

"That the defendants recklessly, wilfully, wantonly and intentionally failed and refused to call for medical assistance for the plaintiff or to report plaintiff's serious injury to the proper authorities after the defendants knew that they had inflicted serious and disabling injuries on the plaintiff and that the plaintiff was lying helpless and bleeding with his arm severed on the defendant Railroad's right of way."

It further alleges that appellant suffered a delay in obtaining medical assistance and services which resulted in additional pain and suffering, injury, loss of blood, shock, anxiety, fear, mental distress and disability.

A.R.S. Sec. 40–338 gives the Arizona Corporation Commission the power to investigate the cause of all accidents upon the property of any public service corporation, arising directly or indirectly from its maintenance or operation, resulting in loss of life or injury to persons or property. Paragraph B requires every public service corporation to file a report of each accident with the commission.

Pursuant to the authority granted by the statute, the commission enacted the following regulation:

"D. Reports by telephone

1. Railroads shall give the Commission *immediate telephone notification* of the following classes of accidents:

a. Accidents resulting in death;

b. *Accidents resulting in injury requiring immediate hospitalization;*

c. Accidents resulting in damage to railroad property in excess of $1,750 dollars;

d. Accidents in which explosives, flammable liquids, compressed gases, corrosives, poisons, or radioactive materials are involved.

2. The immediate telephone notification shall include but not be limited to the following:

a. Name of person making the telephone report;

b. Name of railroad or railroads involved;

c. Location of accident;

d. Number of fatalities;

e. Number of injuries;

f. Number of derailed cars;

g. Generic name or names of the hazardous materials involved, including the name, address, and the telephone number of the shipper." R14–5–406 (emphasis added)

A.R.S. Sec. 40–423(A) makes public service corporations liable to persons injured if the corporation "does or permits to be done anything forbidden or declared to be unlawful, or *omits to do anything required to be done*, by the constitution or laws of the state, or by orders of the commission. . . ." (emphasis added) Neither the statute nor the regulation requires Southern to report to a hospital or other medical facility or service and the claim, on its face, shows no causal connection between appellant's injuries and appellee's failure to report to the commission. Any common law failure to summon medical assistance is included in appellant's fourth claim. The trial court did not err in dismissing Count V.

That part of the judgment dismissing Count IV of the complaint is reversed. The dismissal of Counts III and V is affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.